(No. 12390.—Judgment affirmed.)

MICHAEL ZIMMER, Appellee, *vs.* B. A. L. THOMPSON, Appellant.

*Opinion filed February 20, 1919.*

1. NE EXEAT—*writ of ne exeat cannot be attacked collaterally in suit on bond.* A court of chancery has the power, by virtue of its general equity jurisdiction, to issue the writ of *ne exeat,* and the surety on a bond given to secure the release of a person arrested upon a writ of *ne exeat* cannot contend, in an action on the bond, that the writ was void for failure to comply with statutory requirements.

2. SAME—*surety on bond to release defendant arrested under a writ of ne exeat is liable until satisfaction of decree.* Where a defendant in a separate maintenance suit, upon the service of a writ of *ne exeat,* gives bond to render himself in execution to answer the decree, his liability and that of his sureties continues until the satisfaction of the decree, and the bond is not void because the record does not show any further proceedings on the petition for the writ of *ne exeat* after the defendant's arrest and release or because the final decree for separate maintenance was entered without any reference to the petition.

3. SAME—*plaintiff suing surety after forfeiture of defendant's bond is not bound to prove damages.* A plaintiff in a separate maintenance suit who has lost her remedy for satisfying her decree because of the failure of the defendant to perform the obligation of his bond to render himself in execution to answer the decree need not prove damages in her suit against the surety on the bond, as the measure of damages is the amount due upon the decree to the extent of the penalty of the bond.

APPEAL from the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. SHERIDAN E. FRY, Judge, presiding.

JOHN B. DANDRIDGE, for appellant.

DANIEL ANDERSON, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

On March 16, 1914, Annie Brown filed a bill for separate maintenance against her husband, John Radcliff Brown, in the circuit court of Cook county, and on the same day

the court, upon her petition, ordered a writ of *ne exeat* to issue against him, upon which he was arrested the next day. . To secure his release he gave bond to the sheriff, Michael Zimmer, in the sum of $500, (the amount fixed by the court,) with the appellant, B. A. L. Thompson, as surety, conditioned that he should not depart from the State without leave of the court and should render himself in execution to answer any judgment or decree which the court might render against him. On June 15, 1914, an order was entered in the separate maintenance suit that the defendant should pay the complainant $10 weekly during the pendency of the suit and $25 solicitor's fees, and on May 22, 1915, a final decree was rendered requiring the defendant to pay his wife $25 weekly and $100 solicitor's fees. The defendant having failed to make the payments required of him, an attachment was issued against him on August 26, 1915, but he was not found. Thereupon a forfeiture of the bond was entered, a *capias ad satisfaciendum* was issued on September 7, which was returned "not found" on September 24, and on September 27, 1915, a suit was begun against the surety in the municipal court of Chicago in the name of the sheriff for the use of Annie Brown. The defendant filed an affidavit of merits, and upon a trial by jury the court directed a verdict against the defendant for the full amount of the bond and rendered judgment in favor of the plaintiff, from which the defendant appealed to the Appellate Court, which affirmed the judgment and granted a certificate of importance and further appeal to this court.

The appellant's first contention is that the writ of *ne exeat* was void for the failure to comply with the requirement of the statute that before the writ shall issue, the court, judge or master shall cause to be taken of the complainant a bond, with good and sufficient surety, in such sum as the court, judge or master shall deem proper, conditioned for the prosecution of the bill or petition with

effect and the reimbursement to the defendant of all such damages and costs as he shall wrongfully sustain by occasion of the writ. There was no surety on the bond which was taken. The bond was, however, amendable under the Statute of Amendments and Jeofails, which provides that the court in which an action is pending shall have power to permit amendments in any process, pleading or proceeding, either in form or substance, for the furtherance of justice, on such terms as shall be just. A court of chancery has the power, by virtue of its general equity jurisdiction, to issue the writ of *ne exeat,* which was originally a high prerogative writ but later came to be granted in cases of equitable debts and claims where the debtor was intending to depart from the jurisdiction, to require security of him in the nature of equitable bail. This jurisdiction has been much extended by statute, first enacted in 1827, and now applies to legal as well as equitable demands, to existing debts or demands *bona fide* existing in expectancy though not due, and to the cases of co-obligors or co-debtors and sureties. Having general jurisdiction of the subject matter, the orders of the court, however irregular, are not subject to attack collaterally, and the sufficiency of the petition or the bond to authorize the writ having been adjudicated by the court can only be questioned in a direct proceeding to reverse its decree.

The record does not show that any further proceedings were taken on the petition after the return of the sheriff showing the arrest of John Radcliff Brown and his release from custody after giving bond, and the objection is made that upon the entry of a final decree awarding separate maintenance to the complainant with no reference to the petition for the writ of *ne exeat,* the petition was eliminated from the case and disposed of and the bond thereupon became null and void. Section 10 of the act in relation to *ne exeat* provides that upon the return of the writ, if it shall have been served, the court shall proceed thereon as

in other cases in chancery, if the time for performance of the duty or obligation of the defendant has expired; if not, then the proceedings shall be stayed until it has expired. In this case the sole object of the writ was to require security of the defendant to the separate maintenance suit and the petition for the writ was ancillary to that proceeding. When the bond was given the whole purpose of the petition was accomplished. It does not appear that any answer was filed to the petition or that the defendant made any attempt to have the writ quashed or set aside, as he might have done at any time. The hearing of the principal case and the decree therein fixed the liability of the defendant, and the bond required that the defendant should surrender himself in execution to answer that decree. The bond became effective from the time it was given, and its obligation continued until the performance of the condition or its discharge in some other legal way. The complainant having obtained the security, which was the only object of her petition, was not obliged to take any further action in order to make that security available, but it was incumbent on the defendant to procure the release of the bond if he was entitled to be relieved of its obligation. By giving it, he and his surety became liable, without any further action of the court or the complainant, to render himself in execution of the decree which might be rendered in the separate maintenance suit, and such liability remained until the satisfaction of the decree.

The objection is made that no damages to the appellee were proved because there is no evidence that from June 15, 1914, to August 26, 1915, the payment of the installments of alimony and of the solicitor's fees might not have been enforced against John Radcliff Brown and no evidence that if he had been surrendered he had any property out of which any part of the alimony or solicitor's fees could have been obtained. It is immaterial whether the complainant could have made the amount of the decree of the prin-

cipal in the bond or not.  She was entitled to enforce her decree either by execution against the property of the defendant or attachment against his body.  The appellant had the right to surrender his principal at any time before the forfeiture of the bond in exoneration of himself.  Since he failed to do so the complainant had the right to enforce the obligation of the bond.  It was not necessary for the appellee to prove that the remedy by attachment would have been effectual.  She has lost her remedy through the failure of the appellant to perform his obligation, and the measure of damages is the amount due upon the decree to the extent of the penalty of the bond.  The obligation of bail is to surrender the principal or satisfy the judgment, and the measure of damages is the amount of the judgment and interest.  (*New Haven Bank* v. *Miles,* 5 Conn. 587; *Hall* v. *White,* 27 id. 488; *Richards* v. *Morse,* 36 Me. 240; *McGuire* v. *Pierce,* 9 Gratt. 167; *Kierstut* v. *State,* 1 G. & J. 231; *Hubbard* v. *Hamson,* 1 Bibb, 550.)  "The debtor's body is considered as a pledge for his debt.  It is not for him to say the pledge is inadequate."  (*Burroughs* v. *Louder,* 8 Mass. 373.)  The evidence showed, without contradiction, that more than $900 of the amount of the decree remained unpaid.

It is suggested in the appellant's brief that the issue and return of a *capias ad satisfaciendum,* as required by the provisions of the act in regard to bail in civil cases, is essential before any action can be maintained on the *ne exeat* bond.  Such a writ was issued and returned, but it is objected that the order for the *capias* was without jurisdiction and the return on the writ void.  While these points are stated, no reasons are presented in the argument to support them and we have discovered none.

The judgment is affirmed.          *Judgment affirmed.*