James M. Riggs, Exr.

v.

Louisa P. Powell.

142 453
150 146
142 453
51a 643
142 453
81a 216

*Filed at Springfield November 2, 1892.*

1. HANDWRITING—*how proven—competency of witness.* To render a witness competent to testify as to handwriting, he must be acquainted with the handwriting of the person whose handwriting is in issue, either from having seen such person write or by having been acquainted with such handwriting in business transactions, so as to have in his (the witness') mind an exemplar, so that from memory, alone, he can give an opinion as to whether the writing in question is in fact the handwriting of the person whose handwriting is in issue.

2. It is not indispensable that the witness shall say he is familiar with a person's handwriting before giving his opinion in the case, if it otherwise sufficiently appears that he is.

3. SAME—*comparing signatures.* In this State the handwriting of a person can not be proven by comparing an alleged signature with a genuine one. It can not be proved by a witness examining and comparing the signature in controversy with the recognized signatures of the person whose signature is in issue.

4. EVIDENCE—*declarations of intestate to show assignment of note to his wife.* On a contest between an executor or heir, and the widow of the decedent, as to whether he assigned a note to the wife by way of a gift, the declarations of the testator in his lifetime, in reference to providing for the wife, are competent evidence in her behalf, as directly tending to show that such a gift as claimed might probably have been made, and that such gift was perfectly consistent with his avowed purpose and feelings.

5. SAME—*note held by widow, assigned by deceased husband—burden of proof as to ownership.* Where a widow is cited into the county court on the charge that she holds a note belonging to her deceased husband's estate, and produces the same with his indorsement thereon, but claims the same as a gift, the burden of proof lies upon the personal representative or the heir to rebut the presumption of her ownership and innocence of fraud and forgery, by clear and satisfactory evidence.

6. SAME—*degree of proof to establish crime or fraud.* In such a case, the court, trying the petition without a jury, held that the law does not presume fraud in the absence of proof thereof, and much less a felony ; and that if the note was found in the possession of the widow, indorsed by the deceased, and that she did not have access to his notes

and papers after his death, then the legal presumption is that she is the *bona fide* owner thereof, and to overcome such presumption a mere preponderance of the evidence was not sufficient; that there should be a clear preponderance of the evidence, otherwise the presumption of such fraud as to show a crime would not be established: *Held,* that there was no error in the proposition.

7. Where a cause of action or a defense is based upon a charge of crime, to sustain either the proof must be full and satisfactory. More than a preponderance is necessary.

Appeal from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Scott county; the Hon. George W. Herdman, Judge, presiding.

On the 5th day of May, 1889, Starkey R. Powell died at his residence in Winchester, Scott county, testate. By his will, after making specific bequests to various parties, he gave a certain portion of his real and personal estate to Louisa P. Powell, his widow, and the residue of his estate, both real and personal, to Mary C. Puffer, his daughter by a former marriage, and appointed James M. Riggs his executor. Subsequently, Mary C. Puffer filed her petition in the County Court of Scott county, representing that Louisa P. Powell had in her possession, and refused to surrender to said executor, $400 in money and a promissory note for $4000, executed by George Price to Harriet Nelson and by her endorsed to Starkey R. Powell, and that said money and note were part of the estate of said Powell, and praying that Louisa P. Powell be cited to appear and that she be required to produce said note in court and surrender the same to said executor, and to account to him for said money.

A citation having been issued, Louisa P. Powell appeared, and a hearing being had, the court found that said money and note belonged to Louisa P. Powell and were not a part of said estate, and an order was entered dismissing the petition at the costs of the petitioner. Mary C. Puffer thereupon appealed to the Circuit Court of said county, and in that court

Louisa P. Powell filed her answer in writing to the petition, admitting the possession of said money and note, but claiming them as her own by gift from Starkey R. Powell, in his lifetime. Her statement as to said note was, that on or about February 16, 1889, the note was duly assigned by Starkey R. Powell, by indorsement thereon under his hand, and was then and there duly delivered to her, and that from that date she has had possession, and is, in good faith the owner thereof. To said answer a paper in the nature of a replication seems to have been filed, alleging that said promissory note was not assigned by Starkey R. Powell, and that his name endorsed thereon was not his signature.

In the Circuit Court a trial was had before the court, a jury being waived, and at said trial the court found the issues for the defendant, and found that said note and money were her property, and entered an order dismissing the proceedings at the costs of the executor, to be paid in due course of administration. On appeal to the Appellate Court of the Third District said judgment was affirmed, that court filing as the reasons for its decision the following opinion:

"WALL, P. J.: This was a proceeding instituted by the administrator of Starkey R. Powell, deceased, citing the widow, Louisa P. Powell, to disclose and surrender any money or effects in her possession belonging to the estate. Upon a hearing in the County Court, the citation was dismissed, from which an appeal was taken to the Circuit Court, where the cause was tried by the court and the issue was again found for the widow, whereupon the administrator prayed an appeal to this court.

"The question for determination in the court below was as to the ownership of $400 in cash and a promissory note for $4000. There is no difficulty as to evidence concerning the cash, but there was great conflict in regard to the note. This note was signed by George L. Price, as maker, payable to Harriet Nelson. Across the back the names of the payee and

of the deceased were written in blank. The signature of Harriet Nelson is not disputed, but the genuineness of that of the deceased is the main subject of controversy in the case.

"Upon this point much testimony was introduced, some of it tending to show, by the declarations of the deceased, his intention to provide well for his wife, and that he had given her a valuable note, but mostly consisting of the opinions of witnesses who professed to have more or less acquaintance with his handwriting. There was also the evidence of a microscopist, and there was an enlarged photographic copy of the disputed writing.

"There was abundant proof by those who were familiar with the handwriting of the deceased to support the genuineness of the signature. Opposed to this there was a formidable array of witnesses professing similar acquaintance, who testified that in their opinion it was not his writing, and the microscopic expert was of the same opinion.

"Considering the whole mass, we are inclined to agree with the Circuit Court that it was genuine. The court allowed great latitude, especially at the instance of the administrator, and resorted to the use of a magnifying glass as well as the examination of the enlarged photograph. It is apparent there was a very full and patient consideration of all the suggestions offered by the administrator.

"While there may have been some irrelevant and incompetent testimony introduced on both sides, the presumption is that the court, in deciding the case, disregarded all that was improper, and from an examination of the propositions of law which the court held, we think the appellant can make no complaint in this respect. Objection is made to the following, which was held at the instance of the appellee:

"6. Under the laws of this State handwriting can not be proven by comparing an alleged signature with a genuine one. It is the law that to render a witness competent to testify as to handwriting he must be acquainted with the handwriting

of the person whose handwriting is in issue, either from having seen such party write or by having been acquainted with such handwriting in business transactions, so as to have in his (the witness') mind an exemplar, so that from memory, alone, he can give an opinion as to whether the writing in question is, in fact, the handwriting of the person whose handwriting is in issue. Such handwriting can not be proved by a witness examining and comparing the signature in controversy with the recognized signatures of the person whose signature is in issue."

"We think, however, it is supported by the authorities *Putnam* v. *Wadley*, 40 Ill. 346 ; *Board* v. *Meisenheimer*, 78 id. 22 ; 1 Gr. on Ev. sec. 577 ; 1 Wharton on Ev. secs. 707-712.

"In this connection we may notice the objection taken to the evidence of McGlasson. This witness testified that he had been clerk of the Circuit Court for twelve years ; that he had known Powell for twenty years ; had seen him write his name five or six or a dozen times, and thought this was his genuine signature. It is now objected that the witness should have said, in so many words, that he was familiar with Powell's handwriting, before being allowed to express his opinion. This objection was not made below. The witness was cross-examined at some length as to the way the signature was usually written, and seemed to have a good deal of knowledge as to the details, form of letters, etc., and it is quite apparent he had sufficient acquaintance with the subject to render his opinion admissible. We do not understand it is indispensable a witness should say he is familiar with the party's handwriting, if it sufficiently appears that he is. In *Cross* v. *The People*, 47 Ill. 152, the witnesses had seen the prisoner write but once, and from the knowledge thus acquired they were held competent to give their opinion, the value of the opinion being a question for the jury.

"It is also objected that it was error to permit this and other witnesses to testify to the declarations of deceased as to his

intentions in reference to providing for the appellee. This proof was competent, as directly tending to show that such a gift as here claimed might probably have been made,—that it was perfectly consistent with his avowed purpose and feelings. How far it should go in connection with other evidence was for the court, but we think it was plainly relevant.

"It is also urged the court improperly held the following proposition:

"The law does not presume fraud in the absence of proof thereof. Much less does the law presume a felony, and in this case if the evidence shows that the note and mortgage in question are found in the possession of Mrs. Powell, endorsed by the owner thereof, Starkey R. Powell, and that she did not have access to his notes and papers after his death, then the legal presumption is that she is the *bona fide* owner thereof, and to overcome such presumption a bare or naked preponderance of the evidence would not be sufficient. There should be a clear preponderance of the evidence, otherwise the presumption of such fraud as to show a crime would not be established."

"The petition for citation alleged that appellee had in her possession a note signed by George L. Price for $4000 payable to Harriet Nelson and by the latter endorsed to the deceased and that the same was a part of the estate. To this the defendant answered that the note was hers by assignment from the deceased. This was, in substance, a denial of the charge that she had a note belonging to the estate. The note produced was indorsed by Powell, but the administrator insisted the indorsement was a forgery. Now, where was the *onus probandi*, and what measure of proof was required?

"The appellee made no charge against the estate, but was brought into court to answer a charge that she had a note belonging to the estate. She was required to make no proof in the first place, though she was subject to be examined under oath, but the burden was upon the estate to make out the

charge. That charge could be made only by proof showing the indorsement was a forgery. It is true, that as the case was tried the appellee began by proof to make out, *prima facie*, that the signature was genuine. But this did not change the situation when the court came to weigh the evidence. Practically, before the notes could be taken from the appellee, who had been brought into court at the instance of the administrator, it was necessary that the latter should have made out a case justifying such affirmative action at his instance, against one who was asking no relief.

"The substance of the whole matter is, that it thus devolved upon the administrator to overcome the presumption of ownership arising from possession of the note with the name of Powell indorsed upon it, by showing that the supposed indorsement was forged. This involved a charge of fraud and felony against the appellee. If it was forged, she was necessarily the guilty party. There was no pretense that the indorsement was genuine, but had been made for some purpose other than to transfer it to appellee. The charge was forgery, and attempt was made to prove it by the evidence of the microscopic expert and by other evidence. In such a situation of things the court properly would say, that before the charge could be believed it ought to be supported by a clear preponderance of proof.

"When a cause of action or a defense is based upon a charge of crime, to sustain either the proof must be full and satisfactory. *McConnell* v. *D. M. Ins. Co. et al.* 18 Ill. 228; *Sprague* v. *Dodge*, 48 id. 142; *Oliver* v. *Oliver*, 110 id. 119; *Same* v. *Same*, 119 id. 532.

"We do not understand appellant to argue that the burden did not rest upon him to show the signature was not genuine, but merely that he was required to do so by a mere preponderance of the evidence, and that by this proposition the court held him to a higher measure of proof than the law required. We are of opinion no error was committed in this respect.

"Upon the whole case we think the judgment is responsive to the merits and that it should be affirmed."

From said judgment of affirmance said executor has appealed to this court.

Mr. J. M. RIGGS, *pro se.*:

Before a witness can be permitted to give his opinion as to the genuineness of a particular signature, he must be able to state that he knows the handwriting of the party whose signature is questioned, and state how he derived that knowledge.

The court erred in admitting in evidence the declarations of Powell as to his intentions toward his wife. His good will to his wife was not an issue.

The court erred in holding the first proposition of law, as to the proof of handwriting by comparison. It assumes that the contention of appellant was, that a felony was committed in the signing the name of Powell to the indorsement in question. And aside from this objection, it is fatally defective in the presumptions which it sets forth, and in the further position that the burden rested upon appellant to show that it was not his signature, for legal purposes, by a clear preponderance of the testimony. This was a civil proceeding and the issues joined were only to be established or overcome by a preponderance of the evidence.

The Supreme Court of this State have expressly held that in such cases it is error for a person holding the affirmative of the issue, to be made to establish his position by the clear preponderance of the evidence. *McDeed* v. *McDeed,* 67 Ill. 545; *Life Ins. Co.* v. *Dill,* 91 id. 174; *Ruff* v. *Jarrett,* 94 id. 475; *Brent* v. *Brent,* 24 Bradw. 256; *White* v. *Gale,* 14 id. 274; *Balohradsky* v. *Carlisle,* id. 289.

Messrs. MORRISON & WHITLOCK, for the appellee:

In the case of *McConnel* v. *Insurance Co.* 18 Ill. 228, the court say: "When a cause of action or defense is based upon

a charge of crime, to sustain either the proof must be full and satisfactory." See, also, *Sprague* v. *Dodge,* 48 Ill. 142; *Oliver* v. *Oliver,* 119 id. 532; 110 id. 119.

As to the second proposition marked "held," the criticism of appellant is, it seems to us, even weaker than as to the first. That proposition is, that to render a witness competent to testify as to handwriting he must be acquainted with the signature of the party, either by having seen him write or that he was otherwise in business affairs acquainted with his handwriting. This is certainly the law, both of this and other States. 1 Greenleaf on Evidence, sec. 577; *Trustees* v. *Meisenheimer,* 78 Ill. 22; *Cross* v. *People,* 47 id. 152; *Putnam* v. *Wadley,* 40 id. 346.

Per CURIAM: The same briefs and arguments which were used in the Appellate Court and none others are filed in this court, and consequently, no reasons for interfering with the judgment of the trial court which were not urged upon and considered by the Appellate Court are presented here. The question to which most of the evidence heard at the trial was directed, viz, whether Starkey R. Powell's indorsement of the promissory note in controversy is genuine, being a question of fact, is conclusively settled, adversely to the appellant, by the decision of the Appellate Court. Only the rulings of the trial court as to the law are open for consideration here.

We have carefully considered the opinion of the Appellate Court, so far as it discusses or decides the questions of law raised by the appeal, and are disposed to concur substantially with both its reasoning and its conclusions. We shall not undertake therefore the unnecessary labor of making a further statement of our own views, but for the reasons stated by the Appellate Court the judgment will be affirmed.

*Judgment affirmed.*